**Kevin Lambert CHAPLIN, et. al., Plaintiffs,**

v.

**DU PONT ADVANCE FIBER SYSTEMS, Du Pont Spruance, Du Pont Textile & Interiors, Inc., Defendants.**

**No. CIV. 3:03CV469.**

United States District Court, E.D. Virginia, Richmond Division.

Feb. 18, 2004.

---

Thomas Hunt Roberts, Thomas H. Roberts & Associates PC, Richmond, VA, Kirk David Lyons, Black Mountain, NC, Kevin Lambert Chaplin, pro se, Chesterfield, VA, James Philip Jones, pro se, Robert Coleman Lewis, pro se, Marvin L. Oliver, pro se, Lynn Eugene Ritenour, pro se, Richmond, VA, David Eugene Rowlette, pro se, Petersburg, VA, Stephen Jackson Turley, pro se, Chester, VA, for Plaintiffs.

Jonathan Paul Harmon, Robert Francis Holland, McGuireWoods LLP, Richmond, VA, Niall Anthony Paul, James S. Crockett, Jr., Spilman, Thomas & Battle PLLC, Charleston, WV, for Defendants.

## MEMORANDUM OPINION

### (Granting in Part and Denying in Part Defendants' Rule 11 Motion for Sanctions and Granting Defendants' Motion for Attorneys' Fees and Expenses)

HUDSON, District Judge.

This case is before the Court on Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure [hereinafter "Rule"] 11 and Defendants' Motion for Attorneys' Fees and Expenses. The parties thoroughly briefed both motions, and on January 30, 2004, the Court heard oral argument. After reviewing the pleadings, memoranda, and affidavits filed in support thereof and considering the arguments and case law offered by counsel, the Court denied Defendants' Rule 11 Motion for Sanctions and granted Defendants' Motion for Attorneys' Fees and Expenses. The Court reserved its ruling on the amount and apportionment of fees to be awarded but announced that it would award fees, under 42 U.S.C. § 2000-e-5(k) against both Plaintiffs and their counsel.

Thereafter, and with leave of Court, the Defendants filed a supplemental memorandum on attorneys' fees seeking reconsideration of both the Court's ruling on the Rule 11 motion and its ruling with regard to Title VII fees and costs. On February 13, 2004, Plaintiffs responded. Within their memoranda, both parties alerted the Court to its error in forecasting an award of fees against Plaintiffs' counsel under 42 U.S.C. § 2000-e-5(k). *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761–62, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1508–09 (10th Cir.1996); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 504 (3rd Cir.) (citations omitted), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991); *Durrett v. Jenkins Brickyard, Inc.*,

678 F.2d 911, 915 (11th Cir.1982). The Court concedes the error and vacates its ruling on that point. The Court cannot and will not levy Defendants' fees and costs against Plaintiffs' counsel under 42 U.S.C. § 2000–e–5(k).

On the other hand, having reflected on the matter for several additional weeks, the Court also vacates its January 30, 2004 bench ruling with respect to Defendants' Motion for Rule 11 Sanctions. Upon reconsideration, and for the reasons detailed below, the Court now grants Defendants' Rule 11 motion in part, and denies it in part. The Court maintains the balance of its position with respect to Defendants' motion for fees and expenses, granting said motion and apportioning the fees appropriately.

## I. Defendants' Motion for Rule 11 Sanctions

Within their Rule 11 motion, Defendants argued that Plaintiffs' counsel, Kirk Lyons, Esquire ("Lyons"), should be sanctioned (1) for filing an Amended Complaint that contains claims not warranted by existing law, by a non-frivolous extension, modification, or reversal thereof, or by the establishment of new law; and (2) for filing claims that contain allegations and other factual contentions without current or potential future evidentiary support. At an earlier stage, this Court reviewed Defendants' motion and deferred its ruling pending supplemental briefing on critical sub-issues. Additionally, at that time, the Court raised a third Rule 11 issue, which was whether Lyons's actions, in filing pleadings without having the sponsorship of an attorney admitted to practice in the Eastern District of Virginia, comported with Local Rule 83.1. Subsequently, the parties analyzed all three issues in light of the Rule 11 jurisprudence of the Fourth Circuit.

First, as it relates to pleadings in general, Federal Rule of Civil Procedure 11(b) states that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ....

Fed.R.Civ.P. 11(b). In other words, whether a civil complaint satisfies the requirements of Rule 11 depends upon how it measures up against three criteria. First, the complaint must be filed for a proper purpose. Second, each count of the complaint must have a sufficient basis in law. And third, each of the claims must have a sufficient basis in fact.

With respect to the first factor, Defendants argue that Plaintiffs' "crusading," repeat litigation of identical claims and subject matter, in the face of a number of adverse rulings from various courts and circuits, supports an inference that the immediate litigation was meant to harass DuPont. Under the circumstances of this case, which emphasizes Plaintiffs' claim of

national origin discrimination, the Court does not agree.

Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *See* Fed. R.Civ.P. 11 (notes of advisory committee on 1983 amendment). Likewise, Rule 11 "does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987). "Creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir.1990).

Here, it is the opinion of the Court that, regardless of the merits of the claims, Lyons's purpose in filing the immediate lawsuit was not to harass DuPont but, rather, to create or expand Title VII jurisprudence. As the Fourth Circuit has said, "if a complaint is filed to vindicate rights in court, and for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991). Whatever Lyons's collateral intentions were, this Court is convinced that he filed the immediate action, on behalf of the plaintiffs, primarily to broaden the Fourth Circuit's interpretation of "national origin" protection. Consequently, the Court finds no proof that Lyons filed this action for an improper purpose.

Second, Defendants request sanctions because Lyons filed the immediate case in spite of the contrary Fourth Circuit ruling in *Terrill v. Chao*, 31 Fed.Appx. 99, 2002 WL 376681 (4th Cir.2002)(per curiam), *cert. denied*, 537 U.S. 823, 123 S.Ct. 108, 154 L.Ed.2d 32 (2002). In so arguing, Defendants remind this Court that, in *Terrill*, the Fourth Circuit ruled against Lyons when he argued that Title VII included "Confederate Southern American" as a protected class. In light of *Terrill*, it is Defendants' position that the immediate case 'ha[d] absolutely no chance of success under the existing precedent.' *Lewin v. Cooke*, 95 F.Supp.2d 513, 527 (E.D.Va.2000)(quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)).

■ For his part, Lyons concedes that an argument that "has absolutely no chance of success under the existing precedent" may be sanctionable. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir.2002) (citation omitted). He insists, however, that the precedent precluding the claim must be authoritative. *See Goldstein v. Malcolm G. Fries & Assocs.*, 72 F.Supp.2d 620, 628 (E.D.Va.1999). The Fourth Circuit agrees. In *Hogan v. Carter*, 85 F.3d 1113 (4th Cir.1996), the Fourth Circuit noted that:

> [S]ince unpublished opinions are not even regarded as binding precedent in our circuit, such opinions cannot be considered in deciding whether particular conduct violated clearly established law ..... We could not allow liability to be imposed ... based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court.

*Id.* at 1118 (refusing to reject qualified immunity based upon an unpublished opinion that was not directly on point). In this case, although the Court has found no authoritative case law anywhere in the nation to support Plaintiffs' claim of national origin discrimination, neither has it found a single, binding case to the contrary.

Thus, this Court cannot say that the plaintiffs' claim is "[un]warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). Thus, Defendants' motion for sanctions will not be granted on that basis.

■ On the other hand, when compared with the requirements of Rule 11(b)(3), Lyons's Amended Complaint gives this Court great pause. According to Rule 11(b)(3), before filing Plaintiffs' claims, Lyons was required to assure that "the allegations and other factual contentions [therein had] evidentiary support or, if specifically so identified, [were] likely to have evidentiary support ...." Fed.R.Civ.P. 11(b)(3). This means that Lyons was required to conduct a reasonable investigation of the factual bases underlying each of his clients' claims before filing them. *See Cleveland Demolition Co.*, 827 F.2d at 987. When there is *no* factual basis for a particular claim, that claim violates Rule 11(b)(3). *See In re Kunstler*, 914 F.2d at 516.

■ In this case, Plaintiffs' amended complaint included three allegations. In sum, it averred that DuPont's ban on the display of the Confederate flag discriminated against them based upon their national origin, their religion, and their race. With respect to Count I, Plaintiffs provided the Court with voluminous facts, both supported and unsupported, purporting to back their claim of national origin discrimination. Irrespective of the merits of that claim, it marginally satisfies Rule 11(b)(3).

■ The Court originally deemed Count II a "close call," denying Defendants' related motion for sanctions. After further consideration, however, the Court is convinced that Lyons had absolutely no factual foundation upon which to base a claim of religious discrimination. As this Court previously noted, nowhere in the Amended Complaint did Plaintiffs allege that they had both requested and been denied a religious accommodation. Even Plaintiffs' belated letter-writing effort failed to support such a claim. Accordingly, it is the opinion of this Court that Count II is so lacking in reasonable evidentiary support that the Court must impose Rule 11 sanctions for the filing of that claim.

■ Likewise, the Court finds that Plaintiffs' Count III racial discrimination claim is neither factually supported nor supportable. The plaintiffs are all Caucasian, but never once did they suggest that DuPont's policy discriminates, directly or indirectly, against Caucasians. On the contrary, Plaintiffs' averred class, Southern Confederate Americans, is multiracial. This fact alone practically eviscerates Plaintiffs' claim that DuPont discriminated against them on the basis of race. Thus, Plaintiffs' amended complaint contains no factual basis whatsoever to support an allegation that DuPont's ban discriminates by race. Lyons's prefiling inquiry could not have revealed otherwise.

Consequently, as the Court noted on January 30, 2004, it is clear that Count III is both frivolous and unwarranted such that it fails to satisfy the requirements of Rule 11(b)(3). Although the Court previously declined to award sanctions with respect to Count III, upon further consideration the Court vacates its previous ruling and grants the Defendants' motion for sanctions on that count.

■ The purposes of Rule 11 are to compensate the victims of the violation, to punish present litigation abuse, to streamline court dockets, to facilitate court management, and to deter future litigation abuse. *In re Kunstler*, 914 F.2d at 522–23. Whether Counts II and III are the product of bad faith or just poor judgment, it is the opinion of the Court that each is so devoid of merit as to warrant Rule 11

sanctions. Consequently, although the Court denies Defendants' Rule 11 motion for sanctions with respect to Count I of the Amended Complaint, the motion is granted with respect to Counts II and III. Fed. R.Civ.P. 11(b)(3). The Court will determine the appropriate amount of sanctions to award after considering other relevant factors below.

## II. Sanctions Based upon Alleged Violation of Local Rule 83.1

Here, although the Court need not rehash the entire procedural history of the case, it is important to repeat some of its most important chronology. Initially, Mr. Lyons was admitted to this Court *pro hac vice* on the motion of local counsel, Mr. Thomas Roberts. Thereafter, on October 7, 2003, the Court allowed Plaintiffs' local counsel to withdraw, leaving the plaintiffs with the representation of Mr. Lyons, who operates out of the Southern Legal Resource Center in Black Mountain, North Carolina, but without the sponsorship of an attorney admitted to practice in the Eastern District of Virginia. At that time, Mr. Lyons made repeated efforts to secure new local counsel.

In the meantime, however, on October 14, 2003, Defendants filed a Rule 12(b)(6) Motion to Dismiss. On October 25, 2003, Mr. Lyons, still without local counsel, sent a letter to the Court requesting that Local Rule 83.1 be waived in order to accommodate his situation.[1] Without waiting for the Court to answer, however, on October 27, 2003, Lyons submitted a response to the motion to dismiss, which the Clerk of the Court received but did not file because of Lyons's *pro hac vice* status. Lyons submitted the response on the date it would

otherwise have been due. Thereafter, on October 31, 2003, Lyons helped his clients file individual motions, purportedly *pro se*, in which Plaintiffs urged the Court to adopt Lyons's response as their own.

Although, on October 17, 2003, Defendants had formally warned Plaintiffs' counsel that they would eventually file a motion for sanctions unless Plaintiffs chose to dismiss the case, they waited the required 21–day "safe harbor" period, as required by Federal Rule of Civil Procedure 11(c)(1)(A), to do so. Then, on November 7, 2003, Defendants filed the Motion for Rule 11 Sanctions that is currently before the Court. Ultimately, on November 19, 2003, after repeated efforts to assist Lyons in securing local counsel, and finding it in the interest of justice to do so, this Court waived Local Rule 83.1 and allowed Lyons to serve as counsel, for the purposes of this case only, without the sponsorship of local counsel.

*Sua sponte*, in its November 25 Memorandum Opinion, the Court advised the parties that it would consider sanctioning Mr. Lyons for his apparent attempt to circumvent Local Rule 83.1. Of course, Lyons argues that he did not attempt to skirt the Local Rule. He posits that he did what he had to do, under the circumstances, in order to most zealously represent his clients.

The Court understands that Lyons was in a difficult situation. He had no local counsel sponsorship, and as this Court is aware from its own attempts to intervene, a number of qualified local attorneys declined the invitation to assist Lyons. What the Court finds particularly vexatious, however, is that Lyons, who is him-

---

1. Local Rule 83.1 states, in pertinent part:
 Any counsel presenting papers, suits or pleadings for filing, or making an appearance, must be members of the bar of this Court, or must have counsel who are mem-

 bers of the bar of this Court to join in the pleading by endorsement .... This obligation may not be avoided or delegated without leave of Court.
 Loc. R. 83.1(F) (E.D.Va.2000).

self not admitted to practice in the Eastern District, chose to file pleadings on behalf of his clients and to label them *pro se.* At the time, Lyons had written a letter to the Court asking for relief from the requirements of Rule 83.1(F). Thus, it is clear that Lyons was aware of the strictures of that Rule. Lyons also knew that the Court was attempting to identify a member of the local bar who might be willing to sponsor him in this case.

Lyons admits that, at the time he assisted his clients with the *"pro se "* pleadings, he was aware of the opinion in *Laremont–Lopez v. Southeastern Tidewater Opportunity Project,* 968 F.Supp. 1075 (E.D.Va. 1997), *aff'd,* 172 F.3d 44, 1999 WL 46845 (4th Cir.1999). *Laremont–Lopez* makes clear that this Court "considers it improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se." Id.* at 1077. Furthermore, the practice of ghost writing documents "will not be tolerated in this Court." *Id.* at 1080.

Lyons tries to distinguish his actions from those of a ghost writer by arguing that, in this case, the Court was fully aware that he wrote the responsive pleading; thus, the Court can assign blame and/or responsibility accordingly. That is true. What Lyons's argument overlooks, however, is the rationale behind the Local Rule. The Rule exists to provide supervision over those attorneys who practice before the Court.

Lyons contends that he had no other alternative, except to suffer a default. Clearly, that is not true. Lyons had several options. First, he could have waited for the Court to respond to his request for assistance. Second, he could have taken advantage of the "safe harbor" period and dismissed the case until he was prepared to file and prosecute it properly. Lyons argues that, had he taken the voluntary dismissal, he still might have been subjected to Defendants' threat of sanctions. That may be the case, but just as they had forewarned, Defendants did not file their motion for sanctions until after Plaintiffs refused to dismiss the matter.

■ In the end, the question is whether Lyons's conduct, as it relates to the local rule, was so egregious that it merits sanctions. As the Court stated during oral argument, it has found no evidence of intentional or malicious wrongdoing on Lyons's part. Thus, although Lyons's actions were improper, it is the Court's opinion that its public reprimand of Lyons was sufficient so as to serve as a future deterrent. Additional sanctions for such actions are unnecessary.

### III. Defendants' Motion for Attorneys' Fees and Expenses

As a second and separate motion, Defendants ask the Court for $59,989.49 in attorneys' fees and $2,240.25 in costs under 42 U.S.C. § 2000e–5(k). Title VII, 42 U.S.C. § 2000e–5(k) provides that, "In any action or proceeding under this subchapter, the Court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs ...." 42 U.S.C. § 2000e–5(k). According to the United States Supreme Court, this means that attorneys' fees should be awarded to the prevailing defendants in a Title VII case upon a finding that the plaintiffs' action was "frivolous, unreasonable, or without foundation, *even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)(emphasis added).

### A. An Award of Fees and Costs is Appropriate

■ For a number of reasons, it is the Court's opinion that although neither

Plaintiffs nor Lyons brought Plaintiffs' national origin count in subjective bad faith, the claim itself was frivolous, unreasonable, and without foundation. In so deciding, the Court first considered the state of the law in both the Fourth Circuit and the nation with respect to what anchors an actionable Title VII claim. To that end, the United States Supreme Court has made abundantly clear, and Plaintiffs concede, that in order to state a cognizable claim, every Title VII claimant must suffer an adverse employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiffs, here, did not suffer an adverse employment action, and it was unreasonable for them to argue that they had experienced such adversity.

Second, as the Court discussed in awarding Rule 11 sanctions, Plaintiffs' religious discrimination count failed to aver that Plaintiffs ever requested an accommodation. Plaintiffs' eleventh hour attempt to show that they made such a request, many weeks after they sought relief from the Equal Employment Opportunity Commission, is not only incredible but, frankly, disingenuous. Accordingly, it is the Court's opinion that Count II is also frivolous, unreasonable, and without foundation.

Finally, and worst of all, is Plaintiffs' racial discrimination claim. According to the Fourth Circuit, an award of attorneys' fees is appropriate where "the record ... is devoid of any credible evidence to support a claim that [plaintiffs were discriminated against] for racial reasons." *Arnold v. Burger King Corp.,* 719 F.2d 63, 67 (4th Cir.1983). Count III fails to aver, in any way, shape, or form, that Plaintiffs received disparate treatment based upon their race. In fact, inasmuch as Plaintiffs' group of Confederate Southern Americans seems to include Caucasians, African–Americans, and a Native American, Plain-

tiffs aver no *one, particular* race that was affected by DuPont's ban. Thus, in addition to meriting Rule 11 sanctions, the Court finds Count III to be particularly frivolous and worthy of reimbursement under 42 U.S.C. § 2000–e–5(k).

To reiterate, the Court is not convinced that this lawsuit was inspired by improper motives. By filing this case, it appears that Plaintiffs sought to extend the scope of protection afforded, under Title VII, to a proposed national origin group composed of Confederate Southern Americans. Based on current Civil Rights jurisprudence, however, the likelihood of attaining such a goal is improbable. Thus, while the Court is mindful that Plaintiffs' ambitions appear to be sincere, it cannot permit them to pursue their foundationally deficient claims at Defendants' expense. Accordingly, Defendants' motion for fees and costs is granted.

With respect to the fee calculation and apportionment, the Court's analysis is complicated by Plaintiffs' lack of bad faith, coupled with their meager financial means. Accordingly, the truly burdensome questions for this Court are how much of Defendants' requested fees and costs should be awarded and how the costs should be apportioned among the individual plaintiffs.

**B. How to Calculate Fees—the *Johnson* Factors**

The Fourth Circuit has identified twelve factors, first enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), that have some bearing on the appropriate amount of attorneys' fee to award to prevailing plaintiffs. *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978); *Anderson v. Morris,* 658 F.2d 246, 248–49 (4th Cir. 1981). To determine the appropriate amount of an award, the Court begins by

multiplying the number of hours reasonably expended on the case by the attorneys' reasonable or customary hourly rate. *Allen v. Burke,* 690 F.2d 376, 380 (4th Cir.1982); *Anderson,* 658 F.2d at 249. Once that figure is established, the court should consider the remaining *Johnson* factors and then adjust the amount accordingly.

Courts have traditionally considered at least twelve factors before awarding fees, including:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*Allen,* 690 F.2d at 379 (quoting *Barber,* 577 F.2d at 226). The district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor. In fact, as the United States Supreme Court noted in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), many of the *Johnson* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" and

need not be further considered at all. *Id.* at 434 n. 9, 103 S.Ct. 1933; *see also Anderson,* 658 F.2d at 249.

 In addition to the *Johnson* factors, the district court may consider the relative financial positions of the litigants. *Arnold,* 719 F.2d at 67. As the Fourth Circuit noted more than twenty years ago:

Indeed, fee awards that callously disregard the financial straits of a losing plaintiff would soon defeat the overarching remedial purposes of Title VII by discouraging all but the airtight cases. *Christiansburg,* 434 U.S. at 422, 98 S.Ct. 694. The dual interests of equity and deterrence can be advanced without giving overriding consideration to the punitive value of a fee award, particularly when the reduced award still represents a substantial burden on the plaintiff and the defendant is fully capable of absorbing a reasonable share of its legal fees without hardship.

*Arnold,* 719 F.2d at 68. Of course, the financial position of the plaintiff is only one factor for the court to consider. Additionally, after determining the reasonable value of the work performed in a case, the trial court may reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation of the plaintiffs, and the relative economic status of the parties. *Id.*

Although, here, the Defendants clearly satisfied the statutory criteria under Title VII for recovery of reasonable attorneys' fees and costs, the task of calculating and apportioning a specific award will require a two-part analysis. First, the Court will determine what constitutes a reasonable fee for the services performed in this case. Next, the Court must balance that number against Plaintiffs' ability to pay. The final result will demonstrate a reasoned balance of a number of factors, not the least of which are the plaintiffs' motivation for fil-

ing the case and the potential deterrent effect of the award.

Of course, not all of the *Johnson* factors apply to the immediate case. Many are absorbed into the initial lodestar calculation. *See Anderson,* 658 F.2d at 249. Indeed, as counsel for both sides agree, only a few of the *Johnson* factors are particularly important here. In order to determine how much weight to give to those factors, the Court has reviewed and considered all of the affidavits and supporting information submitted by the parties relating to fees and costs. From that information, the Court has distilled the most important facts and has weighed each accordingly.

### 1. *Time and Labor Expended*

First, as the Supreme Court noted in the *Hensley* case, the starting point in establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate. 461 U.S. at 433, 103 S.Ct. 1933. Here, Plaintiffs' counsel concedes that the hourly rate claimed by DuPont's attorneys is reasonable. The dispute revolves around the quantity of time defense counsel expended on the matter, a matter which Defendants have repeatedly alleged is patently frivolous.

To that end, the Court has made a number of observations. First, the initial Complaint in this case was never served on Defendants, and the Amended Complaint, which was twenty-five (25) pages in length not including several dozen pages of attachments, included only three, basic claims of Title VII employment discrimination. Second, the Amended Complaint was neither legally nor factually complex. Third, approximately four months from the date of filing, the Amended Complaint was dismissed on a Rule 12(b)(6) motion without the necessity for oral argument. And

finally, no discovery was ever taken in this case.

During oral argument on their motion for fees, counsel for the defendants acknowledged that a reasonably competent attorney, reviewing the Amended Complaint, could have discerned its frivolity from a simple reading. To fashion an appropriate response, however, required Defendants to employ the efforts of five attorneys and a paralegal. The combined legal efforts of the defense team resulted in 393 billable hours, $59,989.49 in discounted fees, and $2,240.25 in associated costs. According to their pleadings, this amount included a deduction of approximately $19,000 in additional legal fees, which represents a reduction of an additional 133 hours of attorney time.

Broken down by team member, the Defendants' claim of $59,989.49 for 393 hours of labor consists of the following:

| Attorneys | Hours | Rate | Total |
|---|---|---|---|
| James S. Crockett, Jr. | 89.5 | $205 | $18,347.50 |
| Niall A. Paul | 96.8 | $172 | $16,649.60 |
| Robert F. Holland | 38.8 | $163 | $ 6,355.44 |
| Lisa Bray | 103.9 | $130 | $13,507.00 |
| Mark Glover | 41.1 | $121 | $ 4,973.10 |
| Paralegal | | | |
| Sandra Burch | 22.9 | $ 75 | $ 1,717.50 |

In support of their fee application, the Defendants filed the affidavit of Robert E. Eicher, Esquire, a senior partner with the law firm of Williams Mullen. Mr. Eicher is a well-known and distinguished member of the Richmond Bar. In Mr. Eicher's professional opinion, the hours expended by DuPont's counsel are both reasonable and consistent when compared to the prevailing standards in the Richmond area. On the contrary, Plaintiffs vigorously challenge both the number of attorneys Du-Pont employed and the number of hours each attorney expended while litigating this matter. Plaintiffs' argument focuses specifically on the hours the attorneys devoted to reviewing each other's work, ana-

lyzing material, gathering background information about the plaintiffs, consulting with one another, and refining their work product. Additionally, Plaintiffs note that approximately forty-two percent (42%) of Defendants' total, claimed hours were devoted to prosecuting their motions for sanctions and attorneys' fees.

This Court has carefully reviewed the billable hours submitted by the defense team and the specific tasks performed by each attorney in compiling those hours. In so doing, the Court is of the opinion that some pruning is in order. Before determining the number of billable hours to be awarded to each attorney, however, the Court must review the balance of the *Johnson* factors.

### 2. *Novelty and Difficulty of Questions Raised*

The issues involved in this three-count Title VII action were not complex but did require considerable research and analysis. Moreover, as the parties are now acutely aware, the Fourth Circuit has never specifically rejected Plaintiffs' claims in a published opinion. As Mr. Crockett pointed out during oral argument, this absence of authority required the defense team to scour the legal landscape to determine what, if any, arguable legal basis existed to support Plaintiffs' approach to Title VII.

By the same token, however, the defendants spent an exhaustive amount of time briefing their requests for fees and sanctions, neither of which included unprecedented legal issues. In fact, the only related issues therein that even warranted debate were whether Plaintiffs filed the immediate case in bad faith and to what extent their lack of bad faith mitigates a fee award.

### 3. *Skill Required to Properly Perform Legal Services*

Although the defendants' legal team provided excellent representation here, the case itself did not require any specialized advocacy skills.

### 4. *Attorneys' Opportunity Costs in Pressing the Litigation*

This was not a significant factor in this case.

### 5. *Customary Fee for Similar Cases*

Plaintiffs concede that the hourly billing rates charged by the defense attorneys in this case were reasonable and consistent with those in and around the Richmond legal market. However, Plaintiffs contest the number of hours defense counsel devoted to the case. The Court agrees that some adjustment is appropriate.

### 6. *Attorneys' Expectations at the Outset of Litigation*

This was not a significant factor in this case.

### 7. *Time Limitations Imposed by Client or Circumstances*

In accordance with the typical practice in the United States District Court for the Eastern District of Virginia, counsel were required to brief and argue dispositive motions within a very narrow time frame.

### 8. *Amount in Controversy and Results Obtained*

This was not a significant factor in this case.

### 9. *Experience, Reputation, and Ability of the Attorneys*

This was not a significant factor in this case.

10. *Undesirability of the Case within the Legal Community*

There was nothing particularly undesirable about defending this case.

11. *Nature and Length of Professional Relationship Between Attorney and Client*

This is not a significant factor in this case.

12. *Awards in Similar Cases*

Plaintiffs draw the Court's attention to *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761 (4th Cir.2003), as a comparable case involving Title VII claims. The trial court in the *Bass* case, which granted summary judgment to the defendant, awarded attorneys' fees in the amount of $10,968.69. *Id.* at 767. Although the defendant had requested $21,937.39 in fees, which the court found to be reasonable, the district court reduced that amount by one-half because of the plaintiff's financial circumstances. *Id.* On appeal, the Fourth Circuit ratified the district court's approach. Likewise, in assessing fees in the immediate case, this Court will apply the valuable logic of *Bass*.

**C. Total Amounts of Reasonable Attorneys' Fees**

Based on the foregoing review, the Court finds that the following fees are reasonable for the legal services performed in this case:

| Staff Person | Hours | Rate | Total |
|---|---|---|---|
| Crockett | 62 | $205 | $12,710.00 |
| Paul | 67 | $172 | $11,524.00 |
| Holland | 20 | $163 | $ 3,260.00 |
| Bray | 83 | $130 | $10,790.00 |
| Glover | 22 | $121 | $ 2,662.00 |
| Burch | 20 | $ 75 | $ 1,500.00 |
| | | | $42,446.00 |

**D. Adjusting the Award**

Finally, before it can adjudicate the final award in this case, the Court must consider a number of additional factors and public policy considerations, and adjust the reasonable rate accordingly. First, although 42 U.S.C. § 2000e–5(k) is primarily a reimbursement statute, the Court is required to determine what amount is necessary, in this case, to provide a deterrent effect. Of course, the statute is not intended to defeat the overarching remedial purposes of Title VII or to discourage the filing of all but the most solidly pled cases. *See Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694. The immediate lawsuit, however, evolved from theories as yet unrecognized by established law. Moreover, even if the claims had stated a cause of action, several are so lacking in factual foundation as to be risible. On the other hand, in the balance between equity and deterrence, Plaintiffs' lack of bad faith and avowed commitment to their cause are each entitled to some weight.

Finally, and perhaps most significantly, the Court is required to consider the relative financial positions of the litigants. "The policy of deterring frivolous suits is not served by forcing the misguided plaintiff into financial ruin simply because he prosecuted a groundless claim." *Arnold*, 719 F.2d at 68. *Accord DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir.1999). Obviously, DuPont is fully capable of absorbing a reasonable share of its legal fees without suffering a material hardship. The question is what is "reasonable" in the context of an unfounded lawsuit?

Clearly, Plaintiffs are gentlemen of modest means each of whom possesses limited disposable income. Of course, this does not absolve any of them of his responsibility for filing frivolous legal claims. *See Bass*, 324 F.3d at 767. Consequently, and in light of the financial positions of the parties, the Court will require the plaintiffs to reimburse the defendants for $26,100.00 in attorneys' fees and $1,450.00 in associated costs, for a total of

$27,550.00. The Court will apportion the award as follows: [2]

| Plaintiff | Portion of Award Payable |
|---|---|
| Kevin L. Chaplin | $ 5,500 |
| James P. Jones | $ 3,500 |
| Robert C. Lewis | $ 3,500 |
| Marvin L. Oliver | $ 2,500 |
| Lynn E. Ritenour | $ 5,000 |
| David E. Rowlette | $ 4,000 |
| Stephen J. Turley | $ 3,550 (Counts 1 & 2 only) |

### E. Amount of Sanctions against Lyons

Additionally, considering both the foregoing analysis and the circumstances that led up to this determination,[3] it is the judgment of the Court that the actions of Kirk D. Lyons, Esquire merit sanctions, pursuant to Rule 11(b)(3), in the amount of $10,000.

### F. Conclusion

In sum, the Court awards attorneys' fees totaling $26,100.00 and costs of $1,450.00, for a total of $27,550.00, payable as indicated above. The Court further sanctions counsel for the plaintiffs in the amount of $10,000. An appropriate Order will accompany this Memorandum Opinion.

Let the Clerk send a copy of this Memorandum to all counsel of record.

2. These numbers are based on the financial status of the individual plaintiffs as described in their affidavits. Each affidavit was previously filed as an exhibit in this case.

3. One of these circumstances was Lyons's request, tendered during oral argument, that the Court sanction him personally. In so doing, Lyons noted that the Southern Legal Resource Center, whose representative joined Lyons at counsel table, would likely indemnify him.