Peter GOLDSTEIN, et al., Plaintiffs,

v.

COSTCO WHOLESALE CORP., et al., Defendants.

No. CIV.A. 02–1520–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 15, 2004.

Eliza Platts–Mills, Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, DC and Roger E. Warin, David L. Roll, Lindsey B. Lang, Julie Jackson Allen, Steptoe & Johnson, Washington, DC, for the Disability Rights Council Of Greater Washington.

Charles A. Valente and Eli Rollman of Krasnow Saunders Cornblath, LLP, Chicago, IL and John Scalia, Greenberg Traurig, Tysons Corner, VA, for Costco Wholesale Corporation.

## OPINION & ORDER

DOUMAR, District Judge.

In an Opinion and Order dated June 16, 2004, this Court determined that Defendant Costco Wholesale Corporation ("Costco") was entitled to an award of legal fees and expenses. The Court reached this conclusion because Plaintiff Disability Rights Council of Greater Washington ("DRC") disregarded its pre-filing obligations of investigating the factual bases underlying its claim and exhibited a deficient standard of professional conduct by allowing a disability rights claim to be filed unreasonably. This Opinion and Order addresses the amount of legal fees and expenses DRC must pay Costco.

## I. Facts and Procedural Background

When this suit commenced, Plaintiff Peter Goldstein was a 67 year old epileptic who lived in Arlington, Virginia. He experienced seizures resulting from his epilepsy every two to three days, and he took several prescription medications as treatment for this condition. Beginning in 1998, Mr. Goldstein obtained his medications from the pharmacy located in Defendant Costco's Pentagon City warehouse store.

On October 13, 2001, Pentagon City Costco banned Mr. Goldstein from returning to their premises. Mr. Goldstein had demonstrated a history of outrageous behavior within the store, including threatening others with violence. Mr. Goldstein subsequently contacted Linda Royster, the Executive Director for DRC. After meeting with Mr. Goldstein five or six times, Ms. Royster recommended to the DRC board of directors that DRC join Mr. Goldstein in a lawsuit against Costco.

Mr. Goldstein and DRC sued Costco for (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; (2) violation of the Rehabilitation Act, 29 U.S.C. § 794; (3) the common law tort of false imprisonment; and (4) the common law tort of intentional infliction of emotional distress. After hearing the matter, and upon the verdict of a jury for Defendant, this Court entered a final judgment on July 23, 2003 that: (1) Plaintiffs take nothing, (2) the action be dismissed on the merits, and (3) Defendant recover its costs from Mr. Goldstein. On August 5, 2003, the Court amended its Judgment to reflect that Costco may recover its costs from both Mr. Goldstein and DRC.

On August 22, 2003, Costco filed a Motion for Award of Attorney's Fees as a Prevailing Party pursuant to 42 U.S.C. § 12205. After the hearing on this matter, this Court, on June 16, 2004, ordered DRC to compensate Costco for reasonable attorney's fees. The Court also ordered Costco to submit an itemized list of attorney's fees, along with affidavits, and demonstrate that the fees were reasonable and necessarily incurred. The list was to be submitted within 21 days of the Opinion and Order. DRC was given 21 days thereafter to file any objections.

On July 9, 2004, the Court granted a Joint Motion For Scheduling Order and ordered that, if settlement talks failed, Costco must file its legal fees and expenses no later than July 21, 2004. DRC would be given 21 days from that date to file any objections. On July 21, 2004, Costco filed a Memorandum in Support of an Award of Attorney's Fees. On July 26, 2004, Costco filed a Corrected Memorandum in Support of an Award of Attorney's Fees. The Court then extended DRC's deadline to file a responsive brief to Costco's Memorandum to August 19, 2004. On August 19, 2004, DRC filed its Opposition to Costco's Memorandum. Costco filed its Reply in Support of Award of Attorney's Fees on August 25, 2004.

In the meantime, on August 20, 2004, DRC filed a Motion for Reconsideration of the Court's June 16, 2004 Opinion and

Order Granting Defendant's Motion for Award of Attorney's Fees. On August 31, 2004, DRC wrote a letter requesting the Court to require Costco to file an opposition to the Motion and that DRC be given the opportunity to reply. DRC also requested a hearing on its Motion for Reconsideration. On September 3, 2004, Costco filed its Response. DRC filed its Reply on September 14, 2004.

## II. Legal Analysis

### 1. Attorney's Fees

Under the Americans with Disabilities Act, this Court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses and costs ...." 42 U.S.C. § 12205. Because this provision borrows its fee-shifting language from other civil rights statutes, several courts have held that the *Christiansburg* standard for fee-shifting by prevailing defendants applicable in civil rights cases also applies to § 12205. *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir.2001); *Small v. Dellis*, 211 F.3d 1265, 2000 WL 472873 (4th Cir.2000)(unreported opinion); *Bercovitch v. Baldwin Sch., Inc.*, 191 F.3d 8, 10–11 (1st Cir.1999); *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997). There is little doubt, therefore, that the same policies underlying awarding attorney's fees in civil rights claims apply to disability rights claims.

 While an award of legal fees is appropriate in a civil rights action only in extraordinary circumstances, the Court has broad discretion to award such fees upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). When awarding attorney's fees to prevailing defendants, the United States Court of Appeals for the Fourth Circuit has instructed courts to strike a careful balance between not chilling civil rights claims and protecting the judicial process from abuse. *Blue v. United States Dept. of the Army*, 914 F.2d 525, 535 (1990).

 If an award of legal fees is warranted in a civil rights action, determining the award amount consists of a two-step analysis. *Chaplin v. Du Pont Advance Fiber Sys.*, 303 F.Supp.2d 766, 775 (E.D.Va.2004). The Court first must ascertain what constitutes a reasonable fee for the services performed related to the matter. The Court accomplishes this by multiplying the number of hours reasonably expended on the case by the reasonable or customary hourly rate. *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 (4th Cir.1983). When this amount is established, the Court may adjust the amount in light of other factors, including the plaintiff's motivation for filing the case, the plaintiff's ability to pay, and the potential deterrent effect of the award. *Chaplin*, 303 F.Supp.2d at 775–76.

In its July 26, 2004 Corrected Memorandum in Support of an Award of Attorney's Fees, Costco proposes that $15,000 per year for 10 years for a total of $150,000 would be an appropriate fee award for DRC to pay. Costco makes this proposal even though it incurred, as of May 31, 2004, more than $425,000 in legal fees and expenses related to this matter.[1] Ac-

---

1. Costco arrived at $425,000 in the following manner. As of May 31, 2004, Costco incurred $359,429 in legal fees for a total of 1701.4 hours billed to Krasnow Saunders Cornblath, LLP, its national counsel located in Chicago, Illinois. It also incurred $36,894.38 in litigation expenses paid by Krasnow Saunders. In addition, Costco incurred $57,148.50 in legal fees incurred for approximately 200 hours billed to Greenberg Traurig, LLP, its local counsel located in McLean, Virginia. It also incurred $7,764.56 in

knowledging that the Court must consider DRC's ability to pay, Costco bases its proposal on the fact that, as of June 30, 2004, DRC had assets of $100,319.

DRC, on the other hand, asserts that the Court should not award Costco any fees and expenses. DRC first contends that Costco is not entitled to an award of legal fees because the Court did not find DRC's case to be "frivolous." DRC also argues that Costco failed to mitigate the amount of its fees and, therefore, the Court should deny its request. Finally, DRC maintains that an award of $150,000 will cause it to suspend operations in the future.

■ With respect to DRC's argument that Costco is not entitled to an award of legal fees because the Court did not find DRC's case to be "frivolous," the Court reminds DRC that it concluded, in its June 16, 2004 Order and Opinion, that DRC

disregarded its pre-filing obligations of investigating the factual bases underlying its claim and exhibited a deficient standard of conduct by allowing a civil rights claim to be filed unreasonably. As such, DRC's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," as is required for an award of attorney's fees in a civil rights action.

■ DRC also raises two primary objections with respect to Costco's alleged failure to mitigate its fees. DRC first argues that Costco failed to mitigate legal expenses by failing to move to dismiss DRC for lack of standing. According to DRC, Costco should have moved to dismiss for lack of standing because Costco stated "there [was] a substantial question as to [DRC's] standing here" in its Reply Brief in support of its motion for summary judgment. *See* Pl.'s Opp. to Costco's Mem. in

---

litigation expenses paid by Greenberg Traurig. After Krasnow Saunders extended $30,480.38 in credits "to insure Costco was not billed for excessive, duplicative or general unnecessary work," these amounts totaled $430,756.06. Ultimately, Costco maintained it was due $425,475.48, an amount reduced by the amount taxed as costs or $5,280.58.

Courts have traditionally considered twelve factors before awarding legal fees and expenses. *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978); *Anderson v. Morris,* 658 F.2d 246, 248–49 (4th Cir.1981). These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys'

fees awards in similar cases. As the United States Supreme Court noted in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), most of these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" and, thus, need not be further considered at all.

In support of its proposed fee award, Costco filed the affidavit of Charles A. Valente, a partner in the law firm of Krasnow Saunders and a member of the Illinois and Florida bars. Mr. Valente's expertise includes matters involving Title III of the ADA. Given that more than 2000 hours were billed, the type of work that was performed, the expertise required, and the firms that were involved, nothing in the rates charged by Costco's counsel strikes the Court as out-of-the-ordinary—indeed, DRC points to nothing specific. *See Knutson v. Ag Processing, Inc.,* 273 F.Supp.2d 961, 1013–14 (N.D.Iowa 2003)(stating that, in a fee case under the ADA, the party opposing the fee award has the burden to challenge, by affidavit or brief, with sufficient specificity the reasonableness of the requested fee; otherwise, the district court cannot decrease a fee award based on factors not raised by the adverse party).

Supp. of an Award of Atty. Fees at 3. DRC also points to the fact that Costco noted in its fee papers that the "action would never have gotten off the ground" without DRC's involvement. *See id.* These statements, in DRC's view, indicate that Costco should have moved to dismiss DRC for lack of standing and failed to mitigate its expenses by not doing so.

DRC, however, provides no support for why such a motion would have succeeded, and it makes this argument in spite of the fact that it rigorously maintains, in the same Opposition, that both of these contentions as to its standing "are false." In short, DRC's logic is this: in order to mitigate legal expenses, Costco should have made a motion that DRC believed, and continues to believe, would have lacked merit. Thus, in DRC's view, in order to show that it tried to mitigate legal expenses, Costco should have incurred *more* legal expenses by making an argument on an issue that DRC strenuously rejects. The Court rejects such an argument out of hand.

■ DRC also contends that Costco failed to mitigate legal expenses by refusing to settle. DRC points to Costco's counsel's time records for May 6, 2003, noting that he discussed potentially settling the case. *See* Krasnow Time Records at 10, 11. DRC also points out that, on May 3, 2004, Colby Green, of Krasnow Saunders, researched the availability of attorney's fees should Costco prevail. The results of Mr. Green's research were presented on May 6, 2003. This indicates, in DRC's view, that Krasnow Saunders recommended that Costco refrain from settlement and proceed to trial, with the expectation of prevailing and recovering attorney's fees. *See* Opp. to Costco's Mem. in Support of an Award of Atty. Fees at 5. For these reasons, DRC argues that Costco failed to mitigate legal expenses because it should have settled. Al-

ternatively, DRC also maintains that, if the Court awards Costco legal fees, it should not award any fees incurred after May 6, 2003, the date Costco purportedly refused to settle.

With respect to these assertions, the Court reminds DRC that, in its July 16, 2004 Order and Opinion, it concluded that DRC's primary reason for participating in the lawsuit was to attain money for itself, by means of a settlement fee, without conducting a proper pre-filing inquiry and regardless of the underlying merits of Mr. Goldstein's claim. No defendant should have the obligation to settle a groundless claim simply because the costs of litigation are high. DRC is advised that one of the risks of filing suit is that the defendant may decide to defend itself. That is why a pre-filing inquiry is of such importance. To argue that Costco should have settled a groundless lawsuit is unacceptable.

■ Finally, with respect to DRC's argument that an award of $150,000 will cause it to suspend operations in the future, the Court is mindful that it is obligated to consider DRC's ability to pay. *See Arnold,* 719 F.2d at 67. For 2003, according to its audited financial statements, DRC had net assets of $120,135, with current liabilities of approximately $18,000 at year end. Its general and administrative expenses for 2003 totaled $58,582. As of June 30, 2004, according to its audited financial statements, DRC had $100,319, with $99,444 maintained in cash and no current liabilities. In a Declaration by Shelly Fox, DRC's new Executive Director as of June 21, 2004, DRC's net worth was $92,486.19 as of August 3, 2004. *See* Pl.'s Motion for Reconsideration at App. J. Ms. Fox also stated that the organization's monthly expenses were approximately $8,500. *Id.* DRC argues that paying $15,000 will cause the organization to suspend its operations in eight months.

One problem with DRC's argument is that it is based upon an assumption that its current funding is finite. If $92,486.19 is all that DRC will ever have, it is inevitable that it will cease operations, regardless of whether the Court requires it to pay legal fees or not. The Court is not convinced, however, that DRC's current funding is finite, given that it is a non-profit organization that has been able to fund its operations by means of donations, grants, and settlement awards for more than a decade.[2] *See* Pl.'s Opp. to Costco's Mem. in Supp. of Award of Atty Fees at App. D. Nevertheless, given DRC's overall financial situation, the Court is hesitant to impose an award of $15,000 per year for ten years as Costco recommends. According to DRC's audited statements, its administrative costs and expenses for 2003 were $58,582. Considering this amount and the fact that DRC's annual budget appears to hover around $100,000, the Court concludes that a smaller award is appropriate.

The Court, therefore, **AWARDS** Costco $50,000 plus interest and penalties as set forth below for its legal fees and expenses. If DRC is unable to pay the full amount of the award, the Court **ORDERS** DRC to pay $5,000 per year for ten years. This payment schedule takes into account DRC's financial situation by allowing the organization to budget and plan for the expense as well as pay the entire award over a period of time. The Court believes this award is appropriate because, while the Court considers DRC's ability to pay, *see Arnold*, 719 F.2d at 68, it must also consider the interests of equity and deterrence. *Chaplin*, 303 F.Supp.2d at 775–76. This $50,000 award represents approximately one-tenth of the legal fees and expenses Costco incurred in defending this matter. *See Schutts v. Bentley Nevada Corp.*, 966 F.Supp. 1549, 1556 (D.Nev.1997)

(finding that an award totaling one-tenth of the prevailing defendant's legal expenses in an ADA claim was appropriate given the plaintiff's and his counsel's financial status). It represents only a fraction of the time DRC has wasted in this Court. Requiring DRC to pay $5,000 per year for ten years strikes the Court as a decent balance between DRC's ability to pay and the important interests of equity and deterrence.

In addition, this award is supported by the Court's conclusion that DRC was motivated to pursue Mr. Goldstein's claim, primarily, to attain a settlement check. *See* Op. and Order dated June 16, 2004 at 7–8. Specifically, the Court observed that DRC sent a settlement demand for $200,000 to Costco, threatening litigation. This demand letter was the first time DRC made any attempt to contact Costco. Def. Mem. in Supp. of Mot. for Att'y Fees at 3 (citing Linda Royster's testimony on July 22, 2003). When Costco investigated the matter, it discovered records indicating that Mr. Goldstein was banned from the store because he made direct threats of violence to others in the store. *Id.* Costco communicated these findings to the DRC both verbally and by letter, and offered to toll the statute of limitations so that DRC could investigate further. *See id.* at Ex. C, Copy of Charles Valente's October 11, 2002 Letter to DRC. DRC refused. Ignoring the facts, it proceeded with its groundless claim and generated bad publicity for Costco.

In *Peters v. Winco Foods, Inc.*, 320 F.Supp.2d 1035, 1040 (E.D.Cal.2004), the United States Court for the Eastern District of California awarded attorney's fees in a groundless ADA case because "circumstances of [the] case suggest that it was filed for the purpose of obtaining a

---

**2.** According to DRC's audited financial statement for 2003, approximately 78% to 86% of DRC's revenue was received from different legal settlements.

quick settlement, rather than remedying barriers to access for the disabled." In *Peters,* the plaintiff made a series of allegations about the facilities at a grocery store that turned out, after plaintiff's expert visited the store, to be meritless. *Id.* at 1038. Like the case here, the plaintiff asserted an ADA discrimination claim that lacked factual support—a claim that could have been avoided if a reasonable pre-filing inquiry had occurred. *Id.* at 1038–40. In addition, again like the case here, the plaintiff sent a "shake down" letter one month after initiating litigation and requested a settlement of $150,000, even though an investigation would have indicated that the plaintiff did not have a claim. *Id.* at 1040 n. 6. These facts led the *Peters* court to award attorney's fees, and this Court believes the same rationale applies here. DRC was plainly motivated to receive a settlement check, and it disregarded facts that stood in the way of that settlement check. Such motivation weighs against DRC and such behavior should be deterred. *See also Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993) ("When a court imposes fees on a plaintiff who has pressed a 'frivolous claim,' it chills nothing that is worth encouraging."); *Chaplin,* 303 F.Supp.2d at 775–76 (stating that the plaintiff's motivation for filing should be considered when imposing legal fees).

There is no question that, for DRC, having to pay this award stings. But, when a claim is "frivolous, unreasonable, or without foundation," that is exactly what an award of legal fees is supposed to do. Groundless claims such as Mr. Goldstein's serve no one. Resources are wasted; time is lost; and meritorious claims are delayed or ignored. In a situation similar to this case, one court put the problem very well:

> [W]hen lawyers shower the court with frivolous papers, everyone suffers. Defense counsel become cynical and hardened against *all* civil rights plaintiffs.

The federal courts—which today face tremendous pressure from Washington and from the public to conserve costs and deter unfounded litigation—must spend unnecessary time and effort disposing of baseless complaints. Legitimate civil rights plaintiffs pay part of the price for this intransigence, in the form of judges' and lawyers' decreasing patience with plaintiffs and their attorneys. As a result, the public itself understandably loses respect for our entire system of justice.

*Schutts,* 966 F.Supp. at 1566. *See also Peters,* 320 F.Supp.2d at 1041 (observing that meritless ADA litigation "brings into disrepute" the important objectives of the ADA). For the above reasons, therefore, the Court **FINDS** that $5,000 per year for ten years for a total of $50,000 plus interest and penalties as set forth below is a reasonable award for DRC to pay for Costco's legal fees and expenses. Such an annual award should remind DRC to investigate a client's allegations before pursuing them and thus deter future groundless claims. The scheduled payment also takes into account DRC's financial situation by allowing the organization to pay the award over a period of time.

### 2. Motion for Reconsideration

■ In spite of the fact that DRC complains of high legal fees, it nevertheless continues to require Costco to accumulate them by filing a Motion for Reconsideration of the Court's June 16, 2004 Opinion and Order. At every step, DRC seems determined to cause delay and try the Court's patience. Its latest effort has caused the Court to consider sanctioning the lawyers for DRC themselves, including the pro bono counsel assisting DRC. Pro bono attorneys are not above being sanctioned. *See Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 135 (3rd Cir.2001) (noting that the pro bono nature of an attorney's repre-

sentation does not diminish his professional obligations). All attorneys, including those serving in a pro bono capacity, have the legal and ethical obligation to proceed only if he or she believes, as a professional, that the claim is well-founded. *See Baker v. Am. Broad. Co.*, 585 F.Supp. 291, 295 (E.D.N.Y.1984). More and more, it is becoming the Court's experience that those who don the white hat of pro bono work give no consideration whatsoever to the economic consequences of their advocacy. The Court thus feels compelled to emphasize that serving as a pro bono attorney does not empower the attorney to abuse the judicial process with groundless claims, no matter how well-intentioned or committed those involved may be. No one "wins" in situations where there is no claim in the first place. As the Court observed above, the unfortunate result is a cynical public that has lost all respect for our system of justice.

■ Nevertheless, DRC's Motion for Reconsideration is before the Court. The Court may consider DRC's motion because its previous judgment awarding an unspecified amount of attorney's fees was interlocutory in nature, and a district court may review an interlocutory order at any time prior to the entry of a final judgment. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472–73 (4th Cir.1991). Unlike motions for reconsideration of final judgments, which fall under the restrictive standards of Rule 60, interlocutory orders and judgments "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires." *Id.* at 1473 (quoting 7 Moore's Federal Practice, ¶ 60.20 (Matthew Bender 3d ed.)).

In its Motion for Reconsideration, DRC continues to maintain that the Court erred by not finding that DRC's claim was frivolous, arguing that "a finding of frivolousness is a factual predicate to an award of fees." Mot. for Recon. at 3. DRC states: "While decisions subsequent to *Christiansburg* invariably repeat the three adjectives 'frivolous,' 'unreasonable,' or 'without foundation,' the case law makes clear that these terms embrace a singular concept that the Court must make but a single determination, that of frivolousness." *Id.* DRC supports its argument by pointing out that the United States Court of Appeals for the Eleventh Circuit explained that the "three *Christiansburg Garment* criteria should be substantially similar, if not identical." *See Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1558–59 n. 15 (11th Cir.1995).

Indeed, the Court could not agree with DRC more—the three *Christiansburg* criteria are substantially similar. When the Court found that DRC disregarded its pre-filing obligations of investigating the factual bases underlying its claim, it concluded that DRC's claim was groundless and unreasonable. If, as DRC suggests, these terms are "identical" to the term "frivolous," then, under DRC's logic, all three *Christiansburg* criteria have been met here. Moreover, setting aside DRC's questionable logic, the Court also observes that, not only are the three criteria similar, if not identical, they are connected not by the conjunctive "and" but by the conjunctive "or." A specific finding, as to each criteria, is simply not required. The idea that "frivolousness" trumps the criteria of "unreasonable" or "without foundation" is a frivolous argument itself. The Court, for all of the above reasons, rejects DRC's argument on this point.

■ DRC goes on to contend that the record precludes a finding that its claims were frivolous. Mot. for Recon. at 3. Specifically, they urge that their claim could not be frivolous because they presented sufficient facts and evidence to survive Costco's motions for summary judgment and for a directed verdict. *Id.* at 7. While it is

true that the fact that a plaintiff's claim survives dispositive motions is relevant to a determination regarding the frivolous nature of the claim, *see Glymph v. Spartanburg Gen. Hosp.*, 783 F.2d 476, 480 (4th Cir.1986), it is also true that the *Christiansburg* analysis "comes into play only after the [civil rights] claim has been disposed of and requires the court to assess the strength or weakness of that claim viewing the case as a whole." *Greenberg v. Hilton Intern. Co.*, 870 F.2d 926, 940 (2nd Cir.1989), *vacated on other grounds*, 875 F.2d 39 (2nd Cir.1989)(cited with approval by *Blue*, 914 F.2d at 535). As the Fourth Circuit has noted, "Cases that are ultimately viewed as frivolous may well survive motions to dismiss under a system of notice pleading that does not require factual detail and even motions for summary judgment in which the evidence may be presented in sketchy fashion and credibility may not be taken into account." *Blue*, 914 F.2d at 534. The Court, therefore, under the *Christiansburg* analysis, was well within its power to determine, after reviewing the case as a whole, that DRC filed a groundless and unreasonable claim.

Ultimately, DRC rehashes the same arguments the Court has heard before, and the Court declines to change its findings that DRC disregarded its pre-filing obligations of investigating the factual bases underlying its claim and exhibited a deficient standard of conduct by allowing a civil rights claim to be filed unreasonably. Therefore, DRC's Motion for Reconsideration is **DENIED**.

## III. Conclusion

For the above reasons, the Court **AWARDS** Defendant Costco $50,000 plus interest and penalties as set forth below for the legal expenses it incurred in this matter. If DRC is reasonably unable to pay this amount, the Court **ORDERS** DRC to pay $5,000 per year for ten years plus any penalties and interest as set forth below. Accordingly, it is **ORDERED**:

1. Disability Rights Council of Greater Washington must compensate the Defendant Costco $50,000 for the legal fees and expenses it incurred. If DRC is reasonably unable to pay the entire amount within 30 days of this Order, it may apply to this Court to pay the $50,000 fee in ten $5,000 annual payments. If granted, DRC must pay the first $5,000 payment within 15 days of any extension. An application to defer or extend the $50,000 payment must be made within 15 days of the date herein set forth below. If an application to defer or extend is not timely filed, the entire amount is due and payable within 30 days of this Order.

2. If an extension is granted, all subsequent $5,000 payments are due by the first Monday in October on an annual basis without interest unless in default until the entire $50,000 fee is paid.

3. If an extension is granted, for any $5,000 payment not received on the first Monday in October, there will be a late payment penalty of $250. If a payment is more than thirty days late, the entire amount of the total award balance remaining due at that time and an interest penalty of 6% per annum shall be added to the amount due and compounded yearly from the payment due date.

4. All payments should be sent to Costco's counsel, Krasnow Saunders Cornblath, LLP.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**