**James D. ARNOLD, Jr., Appellant,**

v.

**BURGER KING CORPORATION and Fickling Enterprises, Appellees.**

**No. 81–1697.**

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1983.

Decided Oct. 5, 1983.

Rehearing and Rehearing En Banc Denied Feb. 28, 1984.

**64**

Daniel H. Pollitt, University of North Carolina School of Law, Chapel Hill, N.C., for appellant.

Thornton H. Brooks, Greensboro, N.C. (William P.H. Cary, Greensboro, N.C., on brief) and G. Jona Poe, Jr., Durham, N.C. (Terry D. Fisher; Stubbs, Cole, Breedlove, Prentis & Poe, Durham, N.C., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., on brief), for appellees.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

James D. Arnold, Jr., appeals from the district court judgment awarding Fickling Enterprises and Burger King Corp. attorneys' fees for their successful defense against his race discrimination suit.[1] Arnold argues on appeal that the trial court abused its discretion in awarding attorneys' fees to the prevailing defendants and, alternatively, that because the award amounts, $7,189 to Fickling[2] and $3,555 to Burger King, were not reduced in light of his ability to pay, they were excessive. We disagree with both arguments and affirm the district court's judgment.

James Arnold, a black male, was employed by Fickling Enterprises, owner and operator of three Burger King restaurants in Fayetteville, North Carolina. He had been employed as an assistant restaurant manager by the previous owner from 1976 through November 1977, when Fickling purchased the small chain. He subsequently was promoted by Fickling to restaurant manager and served in this capacity for nine months, at which time he was relieved because of his failure to keep proper inventory records. He was then reassigned to the position of training manager at Fickling's Raeford Road restaurant without a reduction in salary.

Shortly after the reassignment, several female employees registered a series of formal complaints with management alleging acts of sexual harassment by Arnold. The complaints accused Arnold of various incidents of misconduct, including proposals to engage in sex and acts of deliberate and suggestive physical contact with female coworkers. In one instance, Arnold was accused of cornering a female employee in the manager's office after hours and forcing his attentions on her; the resulting scuffle led to her blouse being torn in several places. The alleged incident occurred before Arnold's reassignment, but was not reported

1. The appellant initially sought reversal of the trial court's decision on the underlying claim of race discrimination, but has abandoned that position and focused on the attorney's fees question.

2. Fickling was awarded an additional $642.80 to recover the costs of depositions and witness fees. This portion of the fee award has not been challenged.

until after he assumed the position of training manager.

Following the receipt of these complaints, Arnold was discharged. He subsequently filed a race discrimination charge with the EEOC, alleging that Fickling Enterprises and its franchisor, Burger King Corp., had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976). The EEOC issued Arnold a right-to-sue letter and he instituted the present suit in the United States District Court for the Eastern District of North Carolina, naming Fickling and Burger King as co-defendants. In the early stages of the litigation, the trial court found that Burger King had not participated in the discharge decision and dismissed the action against it. In the trial against Fickling, Arnold's only evidence was his testimony and the testimony of several co-workers and friends attesting to his good character. After the defendant's evidence, the trial court ruled that Arnold's claim of race discrimination was frivolous and groundless from the outset and dismissed the case against Fickling. The district court ordered Arnold to pay the prevailing defendants attorney's fees, and asked both defendants to prepare an affidavit verifying the time and expenses incurred in defending against the frivolous claim. It subsequently considered and approved fees in the amount of $7,189 for Fickling and $3,555 for Burger King.

### I.

Arnold argues on appeal that the district court's award of attorneys' fees to Fickling and Burger King was inappropriate under *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). He contends that *Christiansburg* and its progeny authorize attorney's fees awards to prevailing defendants in Title VII cases only when the record is completely devoid of any evidence of race discrimination or when the suit stems from bad faith or vexatious motive.

The Supreme Court made it clear in *Christiansburg* that "a district court may in its discretion award attorneys' fees to a prevailing defendant in a Title VII case, upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation." [3] 434 U.S. at 421, 98 S.Ct. at 700. The *Christiansburg* Court, however, made no attempt to quantify the evidence an unsuccessful plaintiff must produce to avoid an award of attorneys' fees to the defendant. There was no occasion for such formalistic line-drawing. The fixing of attorneys' fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action. The Supreme Court perceived this and, in *Christiansburg,* provided only general guidelines for the exercise of this discretion. These guidelines, although generally pointing to considerations similar to those which control substantive decision-making in Title VII cases, emphasize the potential chilling effect fee awards may have on plaintiffs. The Supreme Court, for example, identified the fee award as a conservative tool, to be used sparingly in those cases which the plaintiff presses a claim which he knew or should have known was groundless, frivolous or unreasonable. *Id.* at 421, 98 S.Ct. at 700. It directed the district court to be particularly sensitive to the broad remedial purposes of Title VII and the danger that attorneys' fee awards in favor of defendants can discourage "all but the most airtight claims." *Id.* at 422, 98 S.Ct. at 700. Finally, it cautioned against *post hoc* reasoning which presumes the merits of the claim to attorneys' fees from the outcome of the case. *Id.* The Supreme Court, however, left the underlying determination of frivolousness largely to the district court's normal decision-making process. The only guidance clothed with some

---

**3.** In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) the Court was interpreting section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1976), which provides:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."

specificity was the Court's direction that the district court need not find "subjective bad faith" to label a claim frivolous. *Id.* at 421, 98 S.Ct. at 700.

■ "Bad faith", in this context, refers to plaintiffs whose motivation for bringing groundless suits is to accomplish collateral purposes, such as delay or harassment. Such "bad faith" was recognized at common law as justifying an award of attorneys' fees to defendants even in the absence of any congressional purpose such as Congress exhibited in enacting section 706(k) of Title VII. *See, e.g., Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The *Christiansburg* Court makes it plain, however, that common law "bad faith" is not necessary to sustain an award of attorneys' fees in Title VII cases. The plaintiff's motive for bringing an action is not central to determining frivolousness for the purposes of awarding attorneys' fees. A plaintiff acting in good faith may nevertheless be assessed fees if his claim is groundless or frivolous. However, although the motivation factor is not a prerequisite to the award of attorneys' fees to the defendant, it may shed light on the degree of frivolousness. *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700.

■ *Christiansburg* pointed to the basic congressional rationale of Title VII as a guide that lower courts could follow in distinguishing frivolous discrimination claims from ones having merit. In reacting to *Christiansburg,* however, the courts have established no consistent pattern in declaring a claim frivolous. *Compare, e.g., EEOC v. Fruehauf Corp.,* 609 F.2d 434 (10th Cir. 1979), *cert. denied,* 446 U.S. 965, 100 S.Ct. 2941, 64 L.Ed.2d 824 (1980) *with Prate v. Freedman,* 583 F.2d 42, 47–8 (2d Cir.1978) *and Nash v. Reedel,* 86 F.R.D. 16, 18 (E.D. Pa.1980). The case law, to the contrary, reflects that widely divergent factors have affected the finding of frivolousness and the award of attorneys' fees. *See National Organization for Women v. Bank of California,* 680 F.2d 1291 (9th Cir.1982) (filing duplicitous motions warrants fee award); *Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911 (11th Cir.1982) (knowingly joining wrong defendant justifies fees); *Bugg v. International Union of Allied Indus. Workers of America Local 507, AFL–CIO,* 674 F.2d 595 (7th Cir.1982) (continuing to prosecute in the face of numerous indicators of meritless claim justifies award); *Montgomery v. Yellow Freight System, Inc.,* 671 F.2d 412 (10th Cir.1982) (past evidence of racial slurs and disparate treatment are sufficient grounds to show case not groundless or frivolous); *Obin v. Dist. No. 9 of International Ass'n of Machinists and Aerospace Workers,* 651 F.2d 574 (8th Cir.1981) (religious slurs, combined with recurring encounters with the same supervisor, showed claim not groundless); *Anthony v. Marion County General Hospital,* 617 F.2d 1164 (5th Cir.1980) (failure to vigorously prosecute not sufficient ground to award fees); *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir.1978) (appellant's subjective good faith belief as to the merits of her claim key factor in disallowing fees). The one common strand running through all these cases is that assessment of frivolousness and attorneys' fees are best left to the sound discretion of the trial court after a thorough evaluation of the record and appropriate factfinding. *See Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40, 53 (1983); *see also, Smith v. Josten's American Yearbook,* 624 F.2d 125 (10th Cir.1980); *Allen v. Burke,* 690 F.2d 376, 379 (4th Cir. 1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983).

■ The trial court in the case *sub judice* clearly was cognizant of the important considerations identified in *Christiansburg.* Moreover, its findings regarding the frivolousness of Arnold's claim are not only supported but compelled by the evidence. The record demonstrates that Arnold's discharge was precipitated solely by his persistent harassment of female employees. Three female employees not only testified as to the gravity of these incidents of harassment, but also made it clear that they reported the misconduct to supervisory personnel. The evidence demonstrates likewise that the work environment in Fick-

ling's restaurants was devoid of discrimination which might otherwise give independent credence to Arnold's claim. The work force was approximately 50% white and 50% black. The number of blacks in management positions had risen from one to five in the two-year period in which Arnold was employed. Significantly, a white employee involved in less severe incidents of sexual harassment than Arnold had been discharged earlier—a fact known to Arnold. There was nothing to suggest that the employer's past dealings with Arnold had been anything but aboveboard and free of racial animus. The record, in fact, is devoid of any credible evidence to support Arnold's claim that he was discharged for racial reasons, and the trial court's finding of frivolousness was fully justified.

## II.

Arnold argues, however, that even if the claim of discrimination was frivolous, the awards of attorneys' fees in the amount of $7,183 to Fickling and $3,555 to Burger King were excessive.

■ This court has reiterated that the amount of an attorneys' fee award " 'is within the judicial discretion of the trial judge who has close and intimate knowledge of the efforts expended and the value of the services rendered. And an appellate court is not warranted in overturning the trial court's judgment unless under all the facts and circumstances it is clearly

wrong.' " Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.1978) (quoting United States v. Anglin & Stevenson, 145 F.2d 622, 630 (10th Cir.1944), cert. denied, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405 (1945). See also Allen v. Burke, 690 F.2d 376, 379 (4th Cir.1982). We have identified the twelve factors first enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)[4] as having a bearing on the appropriate attorneys' fee awards for prevailing plaintiffs. Barber v. Kimbrell's, Inc., 577 F.2d at 226 n. 28; see also Anderson v. Morris, 658 F.2d 246, 248–49 (4th Cir.1981). The starting point for determining the appropriate amount of the award is found by multiplying the number of hours reasonably expended on the case by the reasonable or customary hourly rate. Allen v. Burke, 690 F.2d at 380; Anderson, 658 F.2d at 249. Once this figure is established, the district court is in a position to adjust the award upward or downward in light of the relevant considerations identified in Johnson and elsewhere.

■ The same method of calculation has received approval for use in determining the amount of a prevailing defendant's award of attorneys' fees. See, e.g., Tonti v. Petropoulous, 656 F.2d 212 (6th Cir.1981); Jones v. Dealers Tractor and Equipment Co., 634 F.2d 180 (5th Cir.1981). This method is not the exclusive means to determine attorneys' fees, nor are the Johnson factors exhaustive of the considerations[5] which

**4.** The twelve factors the courts have traditionally considered in awarding plaintiff's fees are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Allen v. Burke, 690 F.2d 376, 379 (4th Cir.1982) (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978). The district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor. In fact, as the United States Supreme Court noted in Hensley v. Eckerhart, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), many of the Johnson factors "are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate" and need not be further considered at all. Id. at —— n. 9, 103 S.Ct. at 1940 n. 9; see also Anderson v. Morris, 658 F.2d 246, 249 (4th Cir.1981).

**5.** Some Johnson factors obviously have limited transferability as part of a formula for computing attorneys' fees for prevailing defendants. Factor number (8), for example, deals with the

should guide courts in assessing fees against plaintiffs. In appropriate circumstances, the district court should give weight to the relative financial positions of the litigants. *See, e.g., Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911 (11th Cir. 1982); *Faraci v. Hickey-Freeman Co., Inc.,* 607 F.2d 1025 (2d Cir.1979); *Spence v. Eastern Airlines, Inc.,* 547 F.Supp. 204 (S.D.N.Y. 1982); *Hill v. Basf Wyandotte Corp.,* 547 F.Supp. 348 (E.D.Mich.1982); *Sek v. Bethlehem Steel Corp.,* 463 F.Supp. 144 (E.D.Pa. 1979). The policy of deterring frivolous suits[6] is not served by forcing the misguided Title VII plaintiff into financial ruin simply because he prosecuted a groundless case. *Faraci,* 607 F.2d at 1028. Indeed, fee awards that callously disregard the financial straits of a losing plaintiff would soon defeat the overarching remedial purposes of Title VII by discouraging all but the airtight cases. *Christiansburg,* 434 U.S. at 422, 98 S.Ct. at 700. The dual interests of equity and deterrence can be advanced without giving overriding consideration to the punitive value of a fee award, particularly when the reduced award still represents a substantial burden on the plaintiff and the defendant is fully capable of absorbing a reasonable share of its legal fees without hardship.[7] When the plaintiff can afford to pay, however, the congressional goal of discouraging frivolous suits weighs heavily in favor of levying the full fees. *Faraci,* 607 F.2d at 1028. Again, the financial position of the plaintiff is but one among the several other relevant factors which a trial judge should consider. A fee award must be based on the reasonable value of the work actually performed on the case; but beyond that limitation, the trial court has broad discretion to reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation of the plaintiff, and the relative economic status of the litigants.[8]

▪ The trial court, in the instant case, arrived at the amount it awarded by multiplying the number of hours spent on each party's defense by a reasonable hourly attorney's fee. Arnold argues that the court should have considered the relative financial status of the litigants and reduced the fee awards from the amount determined by the pure application of the time-rate formula.

worth of the case and the attorney's success or failure in realizing that worth for his client. Definitionally, a frivolous case is devoid of merit or brought for reasons collateral to the purposes of Title VII; hence, the defense attorneys' efforts at exposing its lack of worth do not deserve the same assignment of value as the plaintiff's attorney's efforts at unearthing discriminatory practices. In the former instance, the proof is obvious to reasonably skilled counsel. In the latter instance, the proof is often lurking below the surface and requires a great deal of excavation. Factors (3) and (4) are subject to similar reservations. Factor (10) likewise has limited relevance in prevailing defendant's cases. It is intended to reward an attorney who champions the cause of racial equality in a hostile environment. The defendant's case, by contrast, rarely encounters public enmity of sufficient magnitude to discourage counsel from assuming responsibility for the employer's defense.

6. The Supreme Court acknowledged in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648, 656 (1978), that Congress, by the enactment of § 706(k) of the Civil Rights Act of 1964, "wanted to protect defendants from burdensome litigation having no legal or factual basis." It identified this purpose as having roughly the same importance as the congressional goal of encouraging plaintiffs to challenge invidious employment practices. *Id. see also Grubbs v. Butz,* 548 F.2d 973, 975 (D.C.Cir.1976).

7. There are, of course, varying degrees of frivolousness, and the trial court's decision to reduce fees when the plaintiff is impecunious should take note of that fact. The Supreme Court noted in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), that "if a plaintiff is found to have brought or continued such claim in [subjective] *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." 434 U.S. at 422, 98 S.Ct. at 701. It follows from this language that a trial court must be sensitive to the degree of frivolousness involved in a Title VII suit when it decides the appropriate fee award.

8. There are, of course, factors which the trial court should not consider in awarding attorneys' fees to the defendant. *See, e.g., Anderson v. Morris,* 658 F.2d at 249.

We find no abuse of discretion in the court's decision to award full fees. Arnold's claim of race discrimination was frivolous from the outset, and his insistent prosecution of the claim tested the borders of subjective bad faith.[9] The trial court found that Arnold was gainfully employed and apparently able to pay the fee award on such reasonable terms as might be arranged, and that the fee award was the reasonable value of the attorneys' services. It was required to do no more. *Anderson v. Morris,* 658 F.2d at 249.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

9. The trial court expressed the view in its decision that Arnold brought this suit solely to vindicate himself in the eyes of his wife and family, and that he was aware the suit was groundless from its initiation. We need not decide whether this constituted "subjective bad faith" because the trial court did not make specific findings of fact to support its view of Arnold's motivation.