**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1687**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                    Plaintiff - Appellant,

          v.

PROPAK LOGISTICS, INC.,

                    Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, District Judge.  (1:09-cv-00311-MR-DLH)

Argued:  January 28, 2014          Decided:  March 25, 2014

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.  Judge Wilkinson wrote a separate concurring opinion.

**ARGUED**: Susan Ruth Oxford, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.  John Doughty Cole, Sr., NEXSEN PRUET, PLLC, Charlotte, North Carolina, for Appellee.  **ON BRIEF**: P. David Lopez, Lorraine C. Davis, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court abused its discretion in ordering that the Equal Employment Opportunity Commission (EEOC) pay attorneys' fees to a prevailing defendant employer after the court awarded summary judgment to the employer in an action brought by the EEOC. In awarding attorneys' fees, the district court concluded that the EEOC acted unreasonably in filing the employment discrimination complaint, because events that occurred during the EEOC's administrative investigation precluded the EEOC from obtaining either injunctive or monetary judicial relief. Upon our review, we affirm the district court's judgment.

I.

In January 2003, Michael Quintois filed a charge of discrimination with the EEOC against his former employer, Propak Logistics, Inc. (Propak), a provider of commercial warehousing, transportation, packaging, and shipping services. Quintois was a supervisor at Propak's Shelby, North Carolina facility, and alleged that Propak terminated his employment based on his "American" national origin after he complained that the company hired only Hispanic workers for certain supervisory positions. The EEOC notified Propak of the discrimination charge arising under Title VII of the Civil Rights Act of 1964 (Title VII).

2

Based on Quintois' discrimination charge, the EEOC initiated an investigation of Propak that lasted nearly six years. This investigation included extensive periods of delay and inactivity.

Although Propak responded to the charge in May 2003, the EEOC did not interview Quintois concerning Propak's response until May 2004. The EEOC also delayed until April 2004 its interview of Kathy Ponder, a Propak manager responsible for hiring decisions at the Shelby, North Carolina facility.

In September 2004, the EEOC designated the matter as a "class case." However, as the district court later found, Propak did not receive notice of this procedural decision until about four years later in September 2008.[1]

Although the EEOC scheduled and conducted two witness interviews between October 2004 and March 2005, little other investigative activity occurred during this period. The record also shows that the EEOC did not contact Propak for about two years, between June 6, 2005 and June 7, 2007. In June 2007, the EEOC contacted Propak to speak with Ponder, but was unable to interview her because she had left her job and her whereabouts were unknown.

---

[1] The United States Department of Justice also conducted an investigation of Propak based on Quintois' allegations. That investigation, which lasted about one year, ended in November 2005 without any charges being brought.

During the course of the EEOC's inquiry, Quintois requested a "right to sue" authorization.[2]  After the EEOC granted Quintois' request, Quintois filed a lawsuit against Propak in March 2008, which was dismissed about four months later upon agreement of the parties.

In September 2008, the EEOC concluded its investigation of Propak and issued a "determination letter."  The EEOC stated that it had found reason to conclude that Propak violated Title VII by failing to hire a class of non-Hispanic job applicants because of their race or national origin.  In the letter, the EEOC also invited Propak to participate in informal conciliation to resolve the matter pursuant to the EEOC's statutory mandate to engage in such efforts.[3]  See 42 U.S.C. § 2000e–5(b).

In attempting to conciliate the matter, the EEOC proposed certain remedial measures concerning Propak's facilities in North Carolina and South Carolina.  These measures would have required Propak in these locations to offer certain employment opportunities, to provide training for supervisors and managers,

---

[2] The EEOC's issuance of a "right to sue" letter allows an individual to initiate a private Title VII lawsuit in federal court.  Davis v. N.C. Dep't of Corr., 48 F.3d 134, 138 (4th Cir. 1995).

[3] Conciliation is one of the EEOC's "most essential functions" and, under our precedent, the EEOC is required to engage in a "good faith attempt at conciliation" before it may file a complaint in a federal court.  EEOC v. Radiator Specialty Co., 610 F.2d 178, 183 (4th Cir. 1979).

4

and to post certain notices. By this time, however, Propak had closed all its facilities in those states, thereby rendering it impossible for Propak to implement such remedial measures.[4] Propak advised the EEOC of this fact about one month later.

The EEOC nevertheless initiated a lawsuit in the district court against Propak in August 2009, more than six and one-half years after Quintois filed his discrimination charge. The EEOC alleged in its complaint that between October 2002 and June 2004, Propak violated Title VII by refusing to hire, on the basis of national origin, a class of non-Hispanic individuals at the Shelby, North Carolina facility. The EEOC sought certain injunctive relief, including an order requiring that Propak institute policies and programs to benefit non-Hispanic persons in order to mitigate the effects of the allegedly unlawful employment practices. The EEOC also sought monetary relief on behalf of the affected class of non-Hispanic employment applicants.

Propak filed a motion to dismiss arguing, among other things, that the action should be barred under the doctrine of laches.[5] The district court denied the motion without prejudice

---

[4] The parties do not argue, and the record does not suggest, that Propak's decision to close its facilities in North Carolina and South Carolina was influenced by the EEOC's investigation.

[5] The equitable defense of laches requires that a defendant
(Continued)

5

with respect to Propak's laches defense, and ordered the parties to engage in discovery limited to the issue whether Propak had suffered prejudice resulting from the EEOC's extensive delay in initiating the litigation.

At the conclusion of this discovery period, Propak filed a motion for summary judgment, again asserting the defense of laches. The district court granted Propak's motion, concluding that the EEOC's delay in initiating the lawsuit was "unreasonable." In reaching this conclusion, the court emphasized the fact that during the investigation, "there were significant periods when the EEOC took little or no action toward completing the investigation."

The district court held that Propak suffered prejudice resulting from the EEOC's "unreasonable delay." The court observed that certain important witnesses, including the site managers for the Shelby facility during the relevant time period, were no longer employed by Propak and that "locating them would be difficult, if not impossible." The court also stated that even if such witnesses ultimately could be located, they likely would have "faded memories" of the time period at

---

prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 409 (4th Cir. 2005) (citation and internal quotation marks omitted).

issue, which was more than five years before the complaint was filed.

The court noted that the EEOC's delay caused Propak additional prejudice, because Propak routinely had destroyed personnel records three years after an individual no longer was employed by the company. Thus, Propak destroyed the records of employees who left the company between 2002 and 2004 before being notified in September 2008 that the EEOC was pursuing the matter on a class basis.[6] The court specifically rejected the EEOC's argument that it had notified Propak of the class designation at an earlier date, observing that the record did not support the EEOC's assertion. Although the court also noted the EEOC's failure to identify purported victims and the unavailability of injunctive relief, the court primarily emphasized Propak's inability to produce key witnesses and the destruction of documents essential to Propak's defense.

After the district court entered its judgment in favor of Propak, the EEOC timely filed a notice of appeal. The EEOC later sought dismissal of the appeal, which this Court ordered upon the agreed motion of the parties.

---

[6] The parties dispute on appeal whether Propak acted unlawfully in failing to preserve its records. We need not resolve this issue because it is not material to our analysis of the district court's decision to award Propak attorneys' fees.

7

The district court later considered Propak's motion seeking attorneys' fees in the amount of $192,602.95, which were incurred by Propak after the EEOC filed the complaint. The district court granted the motion, and awarded Propak nearly the full amount requested. Relying on the Supreme Court's holding in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the district court concluded that an award of attorneys' fees was appropriate because the EEOC knew or should have known that its claim "was frivolous, unreasonable, or groundless." Id. at 422.

The district court held that the EEOC acted "unreasonably" in filing the complaint, and alternatively held that the EEOC acted "unreasonably" in continuing the litigation in view of the developing record. The court stated that the EEOC had acted unreasonably in filing the complaint because "by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it." The court held that injunctive relief was not available because Propak had closed the Shelby plant and its other North Carolina facilities, and that an award of monetary damages was unlikely because the EEOC knew before filing the complaint that it could not identify the class of alleged victims.

With respect to the EEOC's continued pursuit of the litigation following discovery, the district court alternatively

8

held that such pursuit was unreasonable because "it was again reaffirmed [during discovery] that purported victims and witnesses could not be located [and] the facilities were closed." The court further concluded that the EEOC unreasonably continued to pursue the litigation after learning that the relevant employment records "were no longer in existence."

Addressing the amount of attorneys' fees, the district court analyzed Propak's request in detail, despite the EEOC's failure to contest the amount sought, and ultimately awarded Propak $189,113.50.[7] The EEOC filed a timely appeal challenging this award.

## II.

The EEOC asks us to hold that federal courts are not permitted to apply the equitable defense of laches in a lawsuit brought by an agency of the federal government. Conceding that it failed to raise this argument in the district court, the EEOC nevertheless maintains that it would be "unjust" to permit an

---

[7] The district court declined to award Propak an additional $3,489.45 in attorneys' fees related to "travel to depositions and research." Propak does not appeal from this decision. Propak also filed in the court a bill of costs pursuant to 28 U.S.C. § 1920, seeking reimbursement of an additional $1,467.33. The court granted the bill of costs in the amount of $61.20, but denied the bill with respect to the remaining $1,406.13. Neither party appeals from the district court's ruling with respect to the bill of costs.

9

award of attorneys' fees incurred in asserting a laches defense. Alternatively, the EEOC asserts that the district court impermissibly relied on its earlier laches determination in awarding attorneys' fees, and that the court made erroneous factual findings in deciding its fee award. We disagree with the EEOC's arguments.

A.

As a general matter, a litigant must pay its own attorneys' fees in the absence of a statutory or enforceable contractual provision allowing attorneys' fees to be awarded to a prevailing party. See Christiansburg, 434 U.S. at 415. Title VII provides such a statutory fee-shifting mechanism, which gives district courts the discretion to award reasonable attorneys' fees to a prevailing party. Id. at 416. This fee-shifting provision states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).

Although Section 2000e-5(k) does not place different burdens on plaintiffs and defendants seeking an award of attorneys' fees, the Supreme Court explained in Christiansburg that a heightened standard applies to a prevailing defendant

10

seeking such an award in a Title VII action. 434 U.S. at 417-22. In contrast to a prevailing private plaintiff, who generally will be awarded attorneys' fees under this provision, a prevailing defendant is eligible to receive such an award only when the court finds that the plaintiff's action was "frivolous, unreasonable, or without foundation."[8] Id. at 421. However, a finding of bad faith is not required for a prevailing defendant to be awarded attorneys' fees. Id.

A district court must avoid engaging in "post hoc reasoning" in considering whether a plaintiff's action under Title VII was unreasonable, and an award will not stand if based only on the plaintiff's failure to prevail. Id. at 421-22. An award of attorneys' fees to a prevailing defendant is a "conservative tool, to be used sparingly" in cases in which the plaintiff initiated or continued to litigate a claim that the plaintiff "knew or should have known was groundless, frivolous, or unreasonable." EEOC v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012) (citations and internal quotation marks omitted).

There is neither a precise test to be used, nor a specific quantum of proof required, in determining whether a plaintiff's

---

[8] The EEOC does not contest on appeal the district court's conclusion that Propak is a prevailing party for purposes of Section 2000e-5(k).

11

claim was unreasonable. Id. (citing Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir. 1983)). Instead, a decision whether attorneys' fees should be awarded to a prevailing defendant under the Christiansburg standard "is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action." Id. (quoting Arnold, 719 F.2d at 65).

We review for an abuse of discretion the district court's decision to award attorneys' fees to Propak under Section 2000e-5(k). See id. at 516. In light of the principles discussed above, we accord great deference to the district court's conclusion that the EEOC's actions were unreasonable. See id. at 517. Additionally, we review the district court's factual findings in support of the fee award for clear error. See Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010); Daly v. Hill, 790 F.2d 1071, 1079 n.10 (4th Cir. 1986).

B.

As an initial matter, we reject the EEOC's request that we consider the issue whether laches is available as an affirmative defense to an action filed by an agency of the United States. Although the issue was relevant to the district court's summary judgment holding, the EEOC abandoned its appeal of the summary judgment order. Accordingly, we do not consider the rationale

12

for the court's laches determination, or the EEOC's arguments relating to that decision, in the present appeal.

We turn to consider the EEOC's argument that the district court improperly based its decision awarding attorneys' fees on the court's earlier laches ruling. The EEOC asserts that the district court engaged in "hindsight logic" in explaining its award of attorneys' fees by referencing its earlier laches holding and the prejudicial delay caused by the EEOC. We disagree with the EEOC's argument.

In awarding attorneys' fees under the Christiansburg standard upon finding that the EEOC unreasonably initiated the litigation, the district court's award was not based on the earlier summary judgment decision. Although the court referenced its previous findings of delay and prejudice from the summary judgment holding, and the two decisions set forth many overlapping facts, the two holdings were based on different principles of law.

The summary judgment holding of laches was based on the EEOC's unjustified delay in bringing the lawsuit, and on the resulting prejudice affecting Propak's ability to defend itself in the action. That decision rested primarily on the unavailability of key witnesses and documents that Propak needed to support its defense.

13

In contrast, the district court awarded attorneys' fees chiefly on the basis that the EEOC's lawsuit effectively was moot at its inception. In reaching this conclusion, the court emphasized that, when the complaint was filed, the EEOC had failed to identify the class of victims who could be entitled to monetary relief, and injunctive relief was unavailable because Propak had closed its facilities in North Carolina. These findings, which were central to the court's conclusion that the EEOC unreasonably initiated the lawsuit, were not material to the court's laches decision articulated on summary judgment. Thus, the court's fee award reflected proper consideration of the Christiansburg standard by assessing whether the EEOC acted unreasonably in initiating the litigation.[9]

We accord "great deference" to the district court's conclusion that the EEOC acted unreasonably in initiating the litigation. See Great Steaks, 667 F.3d at 517. The EEOC argues

_____

[9] Because the district court did not base its decision to award attorneys' fees on the reasonableness of the EEOC's opposition to the laches defense, we do not consider the EEOC's argument that it reasonably thought it could overcome that defense. Separately, we observe that certain facts in the district court's summary judgment decision concerning the unavailability of witnesses and the loss of documents overlap with facts relating to the court's alternative basis for awarding attorneys' fees, namely, that the EEOC's continued pursuit of the litigation was unreasonable. However, because we do not reach the court's alternative holding, we need not address whether that aspect of the court's decision improperly relied on facts relating to the summary judgment decision.

14

nevertheless that the district court erred in reaching this conclusion, and attacks the court's factual finding that the EEOC could not identify individual members of the class of victims eligible for monetary relief.

Under our clear error standard, however, we will not reverse a district court's factual finding unless after reviewing the record we are "left with a definite and firm conviction that a mistake has been committed." Helton v. AT & T Inc., 709 F.3d 343, 350 (4th Cir. 2013). The present record contains four entries from the spring of 2006 noting that an "[i]nvestigator interviewed potential class member," and four similar notations from early 2009 noting that "[p]otential class member [was] interviewed." (Emphasis added.) The EEOC asserts that these entries demonstrate that the EEOC identified the class of victims harmed by Propak's hiring practices during the relevant period. We disagree.

The record lacks any description of the substance of these interviews with "potential" class members, or of any other interviews that may have been conducted to identify the class of purported victims.[10] In particular, the record does not show

---

[10] We also observe that although the EEOC designated documents relating to various interviews and other efforts to identify class members as being privileged material, the EEOC has not identified any reason preventing it from filing redacted versions of these documents in the record.

15

whether the individuals who were interviewed worked or applied for work in the Shelby, North Carolina facility during the relevant time period, nor does the record indicate whether the individuals interviewed had credible claims of discrimination or desired to be included in the class.

The record also includes a notation that "contact letters [were] mailed to potential class members." However, the record does not show that any individuals receiving these letters fell within the EEOC's definition of the target class. Moreover, the fact that the EEOC engaged in efforts to identify "potential claimants" does not establish that the EEOC successfully identified individuals harmed by Propak's hiring practices during the relevant time period. Indeed, the evidence showing the EEOC's efforts to identify the class of victims, without any indication that such efforts were successful, implicitly supports the district court's finding that claimants could not be identified. For these reasons, we do not have a "definite and firm conviction" that the district court mistakenly concluded that the EEOC had failed to identify potential victims in its target class before filing its complaint. See Helton, 709 F.3d at 350.

Next, the EEOC alternatively argues that the district court's factual finding that the EEOC was unable to identify claimants is an "irrelevant consideration." Again, we disagree.

16

We previously have held that an award of attorneys' fees to a defendant under the Christiansburg standard was justified in part because the plaintiff sought relief that it knew or should have known was unavailable. See Hutcherson v. Bd. of Supervisors, 742 F.2d 142, 146 (4th Cir. 1984). Applying that principle here, we conclude that the district court was entitled to consider the lack of remedies available to the EEOC as a result of its inability to identify any potential victims.

We likewise find no merit in the EEOC's assertion that it was entitled to maintain an action seeking relief against Propak despite the fact that, nine months before filing the complaint, the EEOC became aware that Propak no longer operated any facilities in North Carolina. Contrary to the EEOC's contention, the Seventh Circuit's decision in EEOC v. Konica Minolta Business Solutions U.S.A., Inc., 639 F.3d 366 (7th Cir. 2011), offers no support to the EEOC here. The decision in Konica solely concerned the issue whether a subpoena sought by the EEOC requested information relevant to its investigation, in view of the fact that one of Konica's four facilities in the Chicago area had closed. Id. at 367. Moreover, that decision did not sanction the initiation of an enforcement action when a defendant no longer maintained the facilities where the discrimination allegedly occurred.

We therefore conclude that the court did not abuse its discretion in holding that the EEOC acted unreasonably in initiating this litigation.  See Christiansburg, 434 U.S. at 421; Great Steaks, 667 F.3d at 517.  In view of our conclusion, we need not address the district court's alternative holding that the EEOC's continued pursuit of the litigation was unreasonable in light of the developing record in the case. Finally, because the EEOC does not argue on appeal that the district court erred in determining the amount of attorneys' fees to which Propak is entitled, we decline to address the district court's well-reasoned fee calculation.


## III.

For these reasons, we affirm the district court's judgment.


AFFIRMED

18

WILKINSON, Circuit Judge, concurring:

I concur in full in Judge Keenan's fine opinion. I write separately to address an unfortunate implication in the appellant's brief: that federal agencies, and the Equal Employment Opportunity Commission ("EEOC" or "Commission") in particular, should be treated differently from private parties with regard to attorneys' fees determinations.

**\*\*\*\***

The district court noted in its order "that the EEOC acted unreasonably by initiating litigation against Propak after [a more-than-five-year] investigation and at a time when the allegedly noncompliant facilities had been closed and the class of individuals purportedly injured had not existed for five years." J.A. at 564. Nevertheless, the EEOC suggests that it should be given special leeway for the astonishing delays that rendered initiation of this suit so problematic. For example, it offers as a partial explanation for its delay the fact that "evidence provided by Propak was waiting to be reviewed and analyzed by the EEOC's over-burdened staff." Appellant's Br. at 52; see also id. at 53 (justifying a lack of activity by noting the Commission's "review of voluminous documents and analysis of complex statistical data"). The EEOC also seems to suggest that because we have shown deference to its performance of its administrative functions in other circumstances, the district

19

court should not have "second guess[ed]" the Commission's pursuit of this suit and awarded attorneys' fees. Id. at 55-56. Together, these statements appear to argue that agencies should be graded on a curve, due to the burdens placed upon them by statute, regulation, their own internal review processes, and their need to assure the optimal deployment of finite resources.

These arguments do have some intuitive appeal. As the EEOC notes in its brief, the Commission receives tens of thousands of complaints to review each year under Title VII of the Civil Rights Act of 1964 and other statutes such as the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Equal Pay Act. See Appellant's Br. at 6. The agency is required to investigate each of these complaints and, if it finds reasonable cause to believe them true, attempt to eliminate any alleged unlawful conduct through informal methods. See 42 U.S.C. § 2000e-5(b). If these potentially time consuming efforts fail, the Commission is authorized to bring a civil suit against a private party. See id. § 2000e-5(f)(1).

These are substantial tasks. Notwithstanding the Commission's burden, however, Congress and the Supreme Court have not seen fit to exempt it altogether from awards to prevailing defendants under Title VII. The statute specifically provides that "the court, in its discretion, may allow the

20

prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." Id. § 2000e-5(k). Interpreting this language in Christiansburg Garment Co. v. EEOC, the Supreme Court rejected a reading that would have found the EEOC legally exempt from paying fees where a private plaintiff would not be. 434 U.S. 412, 422 n.20 (1978). It noted that although there were some arguments that "fee awards against the Commission should rest on a standard different from that governing fee awards against private plaintiffs," the statute did "not support a difference in treatment among private and Government plaintiffs when a prevailing defendant seeks to recover his attorney's fees." Id. at 423 n.20. Needless to say, most private parties would not dream of trying to excuse the excessive delays here with the explanation that they were otherwise burdened or occupied. Doctrinally, then, the issue is closed.

And with good reason. The Christiansburg Court's standard for a prevailing defendant to recover fees from a plaintiff -- that the suit was "frivolous, unreasonable, or without foundation," id. at 421 -- reflects a determination to head off unjustified litigation. A party forced to defend against a groundless lawsuit is prejudiced every bit as much if the

21

litigation is brought by a federal agency as if it were commenced by a private party. The EEOC in particular brings suit against a wide range of employers for whom the defense of lawsuits may be prohibitively expensive. Christiansburg was sensitive to this problem, noting that "many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights." Id. at 423 n.20.

No doubt Congress was aware that assessing attorneys' fees against the EEOC when it brings a groundless suit might provide a disincentive for the agency to litigate meritorious cases. But it was not unreasonable for Congress to expect the Commission, with its store of expertise and experience, to recognize a baseless suit before being told the same by a federal court. For this reason, "[w]hen a court imposes fees on a plaintiff who has pressed a 'frivolous' claim, it chills nothing that is worth encouraging." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Thus, to vindicate the Title VII fee provision's goals of encouraging meritorious suits while protecting innocent defendants from frivolous ones, the EEOC must be subject to the same potential penalties as private parties who bring vexatious litigation.

Applying a different standard to the EEOC in the absence of any statutory differentiation would simply encourage sub-optimal agency behavior. After all, although it faces the special burdens described above when litigating a case, the EEOC also operates with particular advantages as a litigant. As a government agency, it often benefits from greater resources than do the private parties it sues. See EEOC v. Great Steaks, Inc., 667 F.3d 510, 519 (4th Cir. 2012) (noting the "vast disparity of resources between the government and private litigants"); Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 138 (4th Cir. 1993) (acknowledging congressional concern that private parties' "resources are substantially outweighed by those of the government"). The United States in general enjoys certain procedural advantages in federal court not available to private litigants. See 14 Charles Alan Wright et al., Federal Practice and Procedure § 3652 (3d ed. 1998) (noting various privileges enjoyed by the federal government as a plaintiff). And Title VII in particular provides the EEOC with the ability to exact, albeit unintentionally, high costs on a private employer throughout the investigative process and potential subsequent litigation. See, e.g., 29 C.F.R. § 1601.16 (granting the EEOC authority to issue subpoenas and compel production of evidence under the control of those subpoenaed); 29 C.F.R. § 1602.14

23

(requiring that a defendant charged with discrimination preserve all relevant records until final disposition of the charge).

These advantages have the potential to combine with the more dubious aspects of bureaucratic culture in a way that can be particularly toxic. There is a danger that those inside a public bureaucracy, armed with significant resources, authority, and discretion, may become gradually numb as to how their actions affect those outside parties they investigate or sue. It is bad enough for doctors' or lawyers' offices, or car dealerships, or mail-order retailers to jerk patients or clients or customers around, but those relationships are at least often based on some element of choice and subject to a measure of market discipline. Government, by contrast, has a more unfettered hand over those it either serves or investigates, and it is thus incumbent upon public officials, high and petty, to maintain some appreciation for the extent of the burden that their actions may impose.

Granted that this is an adversary process, it is still remarkable that the saga of delay and indifference recounted by the district court has brought forth not a glint of recognition as to what the agency subjected the defendant to with its start-and-stop behavior over a total investigative and litigative course of nearly eight years. Just as importantly, the plaintiff in this action was left hanging, forced to badger the Commission

24

through counsel for his own right to sue. The same limbo affected both parties to this controversy, and if attorneys' fees were not awarded here, the statutory provision would be effectively decapitated.

As one would hope not to judge an individual on a single incident, so one should not judge an agency on a single case. One can condemn a particular instance of conduct without diminution of respect for the many instances where EEOC litigation challenging illicit discrimination was properly conducted and more than proved its worth. But what happened here was inexcusable. Of course no one wants or expects the Commission to bring suit prematurely. But by the same token, no company deserves to have its affairs tied up by a government agency for this period of time. Even if the agency will not acknowledge the damage that such lengthy investigation and groundless litigation can inflict on companies and their employees, we can. Like individuals, businesses have a right to get on with their affairs. Investigations of this length divert a company's people and resources, preventing the business from devoting its capital, human and financial, to those enterprising purposes for which it was established.

In addition to deciding to litigate a case it had little chance of winning, the EEOC has continued to press its case at the attorneys' fees stage. Its brief essentially rehashes the

25

same arguments on which it was quite unable to prevail on the merits. The Supreme Court has warned that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). But that is exactly what we have. This case "has proceeded too long and its continuation, with the attendant burden of expense, will in and of itself implicate the ability to work justice." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 181 (4th Cir. 1994).

The story of this litigation is regrettable because the EEOC provides primary recourse to those victims of discrimination that persists in our society to an unfortunate extent. The reference to statutory goals and missions, however, cannot be divorced from the manner in which those purposes are implemented. Here, the Commission spent five-and-a-half on-and-off years pursuing its investigation of Propak, by which point the company had closed both facilities in question and, as noted by the district court, the agency had been unable to locate purported victims or class members. The district court was left to observe that "by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it." J.A. at 565. Furthermore, once it had initiated litigation, the Commission acknowledged its unusually long delay and limited discovery left no doubt that the agency still lacked the victims, witnesses,

26

documents or viable theories of relief to win the case. After examining this evidence, the district court not surprisingly determined "that the EEOC's pursuit of the litigation after its filing was unreasonable." J.A. at 565. Surely this is not and must not become the norm. It is not far-fetched to believe that the nation's deep commitment to combatting discrimination will be affected for good or ill by the esteem in which this important agency is held.